**GLANCY PRONGAY & MURRAY LLP**
Lionel Z. Glancy (#134180)
Robert V. Prongay (#270796)
Casey E. Sadler (#274241)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Attorneys for Plaintiff Kamlesh Patel*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAMLESH PATEL, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>KEURIG GREEN MOUNTAIN, INC., BRIAN P. KELLEY, and FRANCES G. RATHKE,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>**JURY TRIAL DEMANDED**</u> |

CLASS ACTION COMPLAINT

Plaintiff Kamlesh Patel ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Keurig Green Mountain, Inc. ("Keurig" or the "Company"), with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Keurig; and (c) review of other publicly available information concerning Keurig.

## **NATURE OF THE ACTION AND OVERVIEW**

1.     This is a class action on behalf of purchasers of Keurig securities between November 19, 2014 and August 5, 2015, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     Keurig develops and sells a variety of coffeemakers (Keurig brewers), and produces and sells specialty coffee and other specialty beverages in pods (including hot apple cider, hot and iced teas, iced coffees, iced fruit brews, hot cocoa and other beverages) for use with its Keurig hot brewing systems.  The Company also offers traditional whole bean and ground coffee in other package types including bags, fractional packages and cans.

3.     On May 6, 2015, after the market closed, the Company announced top-line growth below expectations, primarily due to slower transition to the Keurig 2.0 system.

4.     On this news, shares of Keurig declined $9.88 per share, over 9%, to close on May 7, 2015, at $97.80 per share, on unusually heavy volume.

5.     On May 14, 2015, after the market closed, Keurig held a webcast for investors and analysts and announced that Keurig KOLD would be sold online and select centers beginning in the fall of 2015, but would not be available for full national retail distribution until 2016.

6.      On this news, shares of Keurig declined $8.79 per share, over 8.5%, to close on May 15, 2015, at $93.91 per share, on unusually heavy volume.

7.      On August 5, 2015, after the market closed, the Company disclosed declines in net sales for the third quarter of 2015 and reduced its sales outlook for the remainder of 2015.

8.      On this news, shares of Keurig declined $22.31 per share, nearly 30%, to close on August 6, 2015, at $52.67 per share, on unusually heavy volume.

9.      Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that the Company's Keurig 2.0 brewing system was an unnecessary upgrade and created customer confusion; (2) that, as a result, the Company's sales projections were unrealistic and unattainable; (3) that the full retail distribution of Company's new cold brewing system, Keurig KOLD, would be delayed until 2016; (4) that, as a result, the Company's revenues for 2015 would be below expectations; and (5) that, as a result of the foregoing, Defendants' statements about Keurig's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

10.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

13.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b) and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Additionally, Keurig's conducts business and maintains a production facility in this Judicial District.

14.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

15.     Plaintiff Kamlesh Patel, as set forth in the accompanying certification, incorporated by reference herein, purchased Keurig common stock during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

16.     Defendant Keurig is a Delaware corporation with its principal executive offices located at 33 Coffee Lane, Waterbury, Vermont 05676 and a production facility in Castroville, California.

17.     Defendant Brian P. Kelley ("Kelley") was, at all relevant times, CEO and a director of Keurig.

18.     Defendant Frances G. Rathke ("Rathke") was, at all relevant times, Chief Financial Officer ("CFO") of Keurig.

19.     Defendants Kelley and Rathke are collectively referred to hereinafter as the "Individual Defendants."   The Individual Defendants, because of their positions with the

Company, possessed the power and authority to control the contents of Keurig's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.   Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.   Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.   The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

### SUBSTANTIVE ALLEGATIONS
### Background

20.   Keurig develops and sells a variety of coffeemakers (Keurig brewers), and produces and sells specialty coffee and other specialty beverages in pods (including hot apple cider, hot and iced teas, iced coffees, iced fruit brews, hot cocoa and other beverages) for use with its Keurig hot brewing systems.   The Company also offers traditional whole bean and ground coffee in other package types including bags, fractional packages and cans.

### Materially False and Misleading
### Statements Issued During the Class Period

21.   The Class Period begins on November 19, 2014.   On this day, Keurig issued a press release entitled, "Keurig Green Mountain Announces Strong Fourth Quarter and Fiscal Year 2014 Financial Results."   Therein, the Company, in relevant part, stated:

- Revenue grew 14% for the quarter and 8% for the full year
- Non-GAAP operating income grew 26% for the quarter and 22% for the full year. GAAP operating income increased 29% for the quarter and 24% for the year

- Non-GAAP operating margins expanded 190 basis points in the quarter and 240 basis points for the full year. GAAP operating margins expanded 220 basis points in the quarter and 250 basis points for the full year
- Non-GAAP EPS of $0.90 for the quarter and $3.93 for the full year grew 1% and 16% respectively. Excluding dilution from the Coca-Cola and Lavazza investments and the impact of foreign exchange, non-GAAP EPS grew 12% in the quarter and 21% for the full year. GAAP EPS of $0.86 for the quarter and $3.74 for the full year increased 4% and 18% respectively, reflecting the dilution from these recent equity transactions and the impact of foreign exchange
- Outlook includes fiscal year 2015 revenue growth in the high-single to low-double digit range with non-GAAP EPS growth of mid-single to high-single digits including the dilutive impact of the aforementioned equity transactions and foreign exchange

Keurig Green Mountain, Inc. (Keurig) (NASDAQ: GMCR), a leader in specialty coffee, coffee makers, teas and other beverages with its innovative brewing technology, today announced its business results for the 13 weeks and 52 weeks ended September 27, 2014.

"2014 was an exciting year that saw Keurig Green Mountain successfully execute against aggressive strategic goals and meet or exceed all of our financial targets," said Brian Kelley, Keurig's President and CEO. "The fourth quarter was a strong end to the year, with 17% Keurig beverage system revenue growth highlighted by strong portion pack growth across our brand portfolio."

"Looking to fiscal year 2015, we remain focused on what we believe is a significant opportunity to grow and premiumize home beverages in both our hot and cold platforms. We'll continue to invest and execute behind this opportunity, given the powerful brand connection we've built with consumers and our successful track record of introducing disruptive and innovative products," continued Kelley. "Our strong balance sheet and healthy free cash flow generation are an advantage, enabling us to invest behind organic growth and return meaningful cash to shareholders in the form of both dividends and share repurchases."

22.     On November 19, 2014, Keurig filed its Annual Report with the SEC on Form 10-K for the 2014 fiscal year.  The Company's Form 10-K was signed by Defendants Kelley and Rathke, and reaffirmed the Company's statements previously announced that day.

23.     On January 7, 2015, Keurig issued a press release entitled, "Dr Pepper Snapple Group, Keurig to Bring Products to Keurig Cold System."  Therein, the Company, in relevant part, stated:

Keurig Green Mountain, Inc. (Keurig) (NASDAQ: GMCR), a leader in specialty coffee, coffee makers, teas, and other beverages with its innovative brewing technology, and Dr Pepper Snapple Group (NYSE:DPS) announced today that the companies will develop a selection of Dr Pepper Snapple Group's iconic brands for the forthcoming Keurig Cold at-home beverage system.

"With Keurig Cold, we've leveraged Keurig innovation to make it possible for consumers to create great-tasting cold beverages at home with the one-touch simplicity of Keurig. We're very excited to offer a range of Dr Pepper Snapple's iconic brands in the system at launch," said Lori Tauber Marcus, Keurig's Chief Product Officer, Keurig Cold Systems.

DPS Executive Vice President of Marketing Jim Trebilcock said, "Our team is committed to building and enhancing our leading brands, and this agreement presents an opportunity to reach consumers in new occasions. We're looking forward to working with Keurig to bring our brands to this innovative new platform."

As a part of this multi-year agreement, Keurig will be the exclusive producer of single-serve, pod-based carbonated DPS brands utilizing fountain syrup in the Keurig Cold platform in the United States and Canada.

Launching in the fall of 2015, Keurig Cold is an innovative new beverage system that will offer consumers a convenient way to enjoy cold beverages made at home, including carbonated drinks, enhanced waters, juice drinks, sports drinks, and teas at home with the one-touch simplicity, quality, and variety that North American consumers love about the Keurig® brand hot system platform.

The companies are not disclosing the terms of the agreement.

24.     On February 4, 2015, Keurig issued a press release entitled, "Keurig Green Mountain Announces Fiscal First Quarter 2015 Results." Therein, the Company, in relevant part, stated:

- Non-GAAP EPS1 of $0.88 and GAAP EPS of $0.82
- Net sales of $1.4 billion, in-line with the prior year period
- Updated fiscal year 2015 outlook includes fiscal year 2015 revenue growth in the mid-single to high-single-digits. Revised annual non-GAAP EPS growth of mid-single digits driven by a greater negative impact from foreign exchange
- Repurchased $81 million of shares in the quarter; $1.1 billion in authorization remaining as of December 27, 2014
- Keurig cold system on track to launch this fall

Keurig Green Mountain, Inc. (Keurig) (NASDAQ: GMCR), a leader in specialty coffee, coffee makers, teas and other beverages with its innovative brewing technology, today announced its business results for the 13 weeks ended December 27, 2014.

"Keurig is pleased to deliver earnings per share in line with our outlook. Revenue came in below our expectations primarily due to a weaker than expected holiday season for brewers, including the effect of the voluntary recall on certain MINI Plus brewers, and greater than expected retailer portion pack inventory reductions. We believe these factors are transitory and, while the impact to the holiday season for our hot platform was disappointing, we remain very enthusiastic about our opportunity to grow and premiumize at-home beverages across both our hot and cold platforms," said President and CEO, Brian Kelley.

\*     \*     \*

CLASS ACTION COMPLAINT

6

**Business Outlook and Other Forward-Looking Information**

"Looking ahead, as a result of certain factors that impacted the first quarter, we now expect revenue to grow mid- to high-single digits in fiscal year 2015," said Kelley. "Our innovative technology and growing installed base continue to attract premier beverage brands and, with the signing of recent agreements, we have further extended our unrivalled network of partnerships. We are focused on what we believe is a significant opportunity to grow and premiumize at-home hot beverages and we are on track to launch our Keurig cold system in the fall."

The Company updated its outlook for fiscal year 2015 and provided its outlook for the second quarter:

**Fiscal Year 2015**

- Net sales growth in the mid-single to high-single digits compared to fiscal year 2014
- An annual effective tax rate of approximately 34% to 35%
- Non-GAAP EPS growth of mid-single digits. This outlook:
- Includes an approximate $0.27 dilutive impact from the fiscal 2014 Coca-Cola and Lavazza Equity Transactions
    - o Includes an estimated $0.15 headwind from foreign currency exchange
    - o Excludes any additional actions the Company may take to offset dilution during fiscal year 2015
    - o Excludes the amortization of identifiable intangibles related to the Company's acquisitions and legal and accounting expenses related to the Company's pending securities and stockholder derivative class action litigation and antitrust litigation
- Free cash flow in the range of $225 million to $325 million
- Capital investment in the range of $425 million to $475 million

25.    On February 4, 2015, Keurig filed its Quarterly Report with the SEC on Form 10-Q for the 2015 fiscal first quarter. The Company's Form 10-Q was signed by Defendants Kelley and Rathke, and reaffirmed the Company's statements previously announced that day.

26.    On May 6, 2015, Keurig issued a press release entitled, "Keurig Green Mountain Reports Fiscal Second Quarter 2015 Results." Therein, the Company, in relevant part, stated:

- Non-GAAP EPS1 of $1.03 and GAAP EPS of $0.97
- Net sales growth of 2%; 3% excluding foreign currency
- Updated fiscal year 2015 outlook includes revenue growth of flat to low-single digits, non-GAAP EPS decline of mid-single-digits and free cash flow of $120-$170 million
- Repurchased $837 million of common shares in the quarter
- Board of Directors declared $0.2875 quarterly dividend

Keurig Green Mountain, Inc. (NASDAQ: GMCR), a leader in specialty coffee, coffee makers, teas and other beverages with its innovative brewing technology, today announced its business results for the 13 weeks ended March 28, 2015.

"We are pleased to report that our earnings per share in the second quarter were in line with our guidance. Our top-line growth, however, was below our expectations primarily due to the slower than expected transition to the Keurig 2.0 system. We are taking actions to reduce brewer inventories, enhance our 2.0 brewer packaging to better communicate our extensive brand variety and step up innovation on our owned brands," said President and CEO, Brian Kelley.

"Although we are lowering our guidance to reflect the impact of near-term challenges related to this complex product transition, we remain highly confident in our long term strategy for the Keurig hot system and continue to believe there is a significant runway of opportunity. Combined with the upcoming launch of our Keurig KOLD system, we expect the Keurig brand to further expand and globalize while continuing to transform the premium home beverage experience for consumers," continued Kelley.

### Second Quarter Fiscal 2015 Financial Review

[Table omitted].

### Net Sales by Product

Net sales of $1.1 billion increased 2% versus the prior year period primarily driven by growth in sales of pods (previously referred to as portion packs) partially offset by lower brewer and accessory sales. Foreign currency exchange rates negatively impacted sales by approximately 1 percentage point. Excluding the impact of foreign currency exchange rates, total net sales grew 3% and total Keurig beverage system sales grew 4% compared to the prior year period.

Net sales for the domestic segment increased 3% in the quarter while sales in the Canada segment declined 5% on a reported basis and grew 6% excluding the impact of foreign currency exchange rates.

Total pod net sales increased 7% in the quarter while brewers and accessories net sales declined 23%. Other product net sales declined 5% compared to the prior year period.

*       *       *

### Business Outlook and Other Forward-Looking Information

The Company updated its outlook for fiscal year 2015 and provided its outlook for the third quarter:

### Fiscal Year 2015

- Net sales growth flat to up low-single digits compared to fiscal year 2014
- An annual effective tax rate of approximately 34.5% to 35%
- Non-GAAP EPS decline in the mid-single digits. This outlook:
  - Includes an estimated $0.14 headwind from foreign currency exchange
  - Excludes the amortization of identifiable intangibles related to the Company's acquisitions and legal and accounting expenses related

        to the Company's pending securities and stockholder derivative class action litigation and antitrust litigation

- Free cash flow in the range of $120 million to $170 million
- Capital investment in the range of $425 million to $475 million

**Third Quarter 2015**

- Net sales growth flat to up low-single digits compared to the third quarter of fiscal year 2014
- An effective tax rate of approximately 32% to 32.5%
- Non-GAAP EPS in a range of $0.75 to $0.80 which:
  - Includes an estimated $0.02 headwind from foreign currency exchange
  - Excludes the amortization of identifiable intangibles related to the Company's acquisitions and legal and accounting expenses related to the Company's pending securities and stockholder derivative class action litigation and antitrust litigation

27. On May 6, 2015, after the market closed, Keurig filed its Quarterly Report with the SEC on Form 10-Q for the 2015 fiscal second quarter. The Company's Form 10-Q was signed by Defendants Kelley and Rathke, and reaffirmed the Company's statements previously announced that day.

28. On this news, shares of Keurig declined $9.88 per share, over 9%, to close on May 7, 2015, at $97.80 per share, on unusually heavy volume.

29. On May 14, 2015, after the market closed, Keurig held a webcast for investors and analysts with presentation slides entitled, "KEURIG KOLD INVESTOR EVENT." During the presentation, Tara Murphy, the Vice President and General Manager of Keurig KOLD, in relevant part stated:

> Turning to launch plans, we will be introducing Keurig KOLD in a deliberate manner to ensure the best consumer experience.
>
> Similar to our Hot System, our goal is to drive the installed base before widely distributing the pod at retail. This is because of significant installed base is critical to ensuring we align the pod supply chain with end-user demand and generate adequate velocity on shelf for our retailers.
>
> We will first launch on keurig.com this fall allowing an installed base of appliances to take hold ahead of the move to retail. This will also provide valuable direct consumer feedback early in the launch. The retail launch will follow the digital launch with drink mixers on shelf for the upcoming holiday. The initial retail launch will begin in select major metro population centers and we expect to reach full national retail distribution for the 2016 holiday season.

30. On this news, shares of Keurig declined $8.79 per share, over 8.5%, to close on May 15, 2015, at $93.91 per share, on unusually heavy volume.

31. The statements contained in ¶¶21-30 were materially false and/or misleading when made because defendants failed to disclose or indicate the following: (1) that the Company's Keurig 2.0 brewing system was an unnecessary upgrade and created customer confusion; (2) that, as a result, the Company's sales projections were unrealistic and unattainable; (3) that the full retail distribution of Company's new cold brewing system, Keurig KOLD, would be delayed until 2016; (4) that, as a result, the Company's revenues for 2015 would be below expectations; and (5) that, as a result of the foregoing, Defendants' statements about Keurig's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

32. On August 5, 2015, after the market closed, Keurig issued a press release entitled, "Keurig Green Mountain Reports Third Quarter 2015 Results, Announces Productivity Initiative and $1 Billion Share Repurchase Authorization." Therein, the Company, in relevant part, stated:

- Non-GAAP EPS1 of $0.80 and GAAP EPS of $0.73
- Net sales decline of 5%; 4% excluding foreign currency
- Pod equivalent servings2 volume growth of 5% with 12% growth in U.S. At Home Channels
- Announces multi-year productivity program expected to generate approximately $300 million in cost savings over 3 years
- Approves $1 billion share repurchase authorization
- Approves $0.2875 per share cash dividend

Keurig Green Mountain, Inc. (NASDAQ: GMCR), a leader in specialty coffee, coffee makers, teas and other beverages with its innovative brewing technology, today announced its business results for the 13 weeks ended June 27, 2015.

"While we are not pleased with our revenue growth, we delivered earnings at the high end of our previous guidance," commented President and CEO, Brian Kelley. "We are taking decisive actions to adapt and compete more effectively in today's rapidly-evolving, dynamic marketplace. We are implementing a multi-year productivity program that we are confident will enhance our operational

effectiveness and enable us to fund incremental investment in innovation and brand building. In addition, our new Keurig K200 brewer is off to a strong start with its introduction this past quarter. We believe this addition, as well as the enhancements we've made to our entire At Home brewer line up will allow for continued growth in our U.S. installed base. We continue to believe that our hot system has the potential to reach more than 50 million U.S. households over time --more than double its size today. In addition, the upcoming launch of our Keurig KOLD system creates an even larger opportunity for long-term growth and value creation."

Mr. Kelley continued, "Going forward, we will continue to maintain a strong, flexible capital structure and balance sheet to enable us to return significant value to our shareholders as we continue to invest in the business. Underscoring our commitment to delivering value to our shareholders, today we announced that our Board authorized an additional $1 billion share repurchase which adds to our existing plan. With innovative technology and a premier beverage brands portfolio, Keurig continues to be a recognized leader in the industry and we are confident we will continue our legacy of delivering disruptive and innovative products for the benefit of all Keurig constituents."

### Third Quarter Fiscal 2015 Financial Review

[Table omitted].

**Net Sales by Product**

Net sales of $970 million decreased 5% versus the prior year period with declines in brewer sales and pod sales. Foreign currency exchange rates negatively impacted sales by approximately 1.5 percentage points. Excluding the impact of foreign currency exchange rates, total net sales declined 4% and total Keurig beverage system sales declined 4% compared to the prior year period.

Net sales for the domestic segment declined 4% in the quarter while sales in the Canada segment declined 14% on a reported basis and declined 3% excluding the impact of foreign currency exchange rates.

Total pod net sales declined 1% in the quarter while brewers and accessories net sales declined 26%. Other product net sales declined 12% compared to the prior year period.

[Table omitted].

*Pods*

- The 1% decrease in the quarter in pod net sales compared to the prior year period was due to a 5% increase in equivalent servings2 volume and a 3 percentage point increase due to net price realization. This was offset by an 8 percentage point decrease due to product mix and a roughly 1 percentage point negative impact from foreign currency exchange rates.

CLASS ACTION COMPLAINT
11

***Brewers and Accessories***

- For the quarter, 1.36 million Keurig® system brewers were sold including 1.3 million sold by Keurig and 0.05 million reported sold by Keurig's licensed brewer partners. This brewer shipment number does not account for consumer returns.
- The 26% decline in Keurig's brewer and accessory net sales compared to the prior year period was primarily due to a 18% decline in brewer sales volume, driven by high levels of inventory at retail and timing of restocking the MINI Plus brewer. Brewer net price realization declined by 6 percentage points due to promotional efforts to reduce brewer inventory levels. Brewer mix negatively impacted brewer sales by 2 percentage points. Foreign currency exchange rates negatively impacted brewer net sales by roughly 1 percentage point.
- Additionally, accessory net sales declined 22% compared to the prior year period.

***Other Products***

- Sales of other products declined 12% during the quarter from the prior year period primarily due to the continuing demand shift from traditional coffee package formats to pods and the unfavorable impact of foreign currency exchange rates.

  o For the quarter, gross margin declined 750 basis points versus prior year to 36.0% of net sales. The table below quantifies the changes in gross margin period to period. Obsolescence of finished goods includes an $18 million charge related to Keurig 2.0 brewers in the third quarter which impacted gross margin by 190 bps.

*       *       *

## Fiscal Year 2016 Outlook

Based upon its preliminary estimates for fiscal 2016, the Company expects its hot business to deliver modest non-GAAP earnings per share growth over fiscal 2015 inclusive of the expected productivity savings. The Company expects that its investment in Keurig KOLD™ in 2016 will be at least $100 million and could be higher depending largely on pod manufacturing efficiencies and channel mix. Our fiscal year 2016 non-GAAP EPS excludes any restructuring or one-time charges related to the productivity program.

With regard to the first quarter of fiscal 2016, the Company expects non-GAAP earnings per share to decline versus the prior year quarter as the Company ships more hot appliances year over year, ships KOLD appliances, ramps production on KOLD pods and faces a significant coffee cost headwind in the first quarter of fiscal 2016.

The Company will update its outlook and provide more details related to fiscal 2016 on its fourth quarter earnings announcement.

33.     On this news, shares of Keurig declined $22.31 per share, nearly 30%, to close on August 6, 2015, at $52.67 per share, on unusually heavy volume.

## CLASS ACTION ALLEGATIONS

34.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all those who purchased Keurig's securities between November 19, 2014 and August 5, 2015, inclusive (the "Class Period") and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

35.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Keurig's securities were actively traded on the Nasdaq Stock Market (the "NASDAQ").  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Millions of Keurig shares were traded publicly during the Class Period on the NASDAQ.  As of July 30, 2015, Keurig had 154,058,161 shares of common stock outstanding.  Record owners and other members of the Class may be identified from records maintained by Keurig or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

36.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

37.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

38.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Keurig; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

39.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## **UNDISCLOSED ADVERSE FACTS**

40.     The market for Keurig's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Keurig's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Keurig's securities

relying upon the integrity of the market price of the Company's securities and market information relating to Keurig, and have been damaged thereby.

41. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Keurig's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. Said statements and omissions were materially false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about Keurig's business, operations, and prospects as alleged herein.

42. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Keurig's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## LOSS CAUSATION

43. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

44. During the Class Period, Plaintiff and the Class purchased Keurig's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities

significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

45.     As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Keurig, his/her control over, and/or receipt and/or modification of Keurig's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Keurig, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

46.     The market for Keurig's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Keurig's securities traded at artificially inflated prices during the Class Period.  On November 19, 2014, the Company's stock closed at a Class Period high of $152.67 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Keurig's securities and market information relating to Keurig, and have been damaged thereby.

47.     During the Class Period, the artificial inflation of Keurig's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages

sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Keurig's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Keurig and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

48. At all relevant times, the market for Keurig's securities was an efficient market for the following reasons, among others:

(a) Keurig stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, Keurig filed periodic public reports with the SEC and/or the NASDAQ;

(c) Keurig regularly communicated with public investors *via* established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d) Keurig was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

49.     As a result of the foregoing, the market for Keurig's securities promptly digested current information regarding Keurig from all publicly available sources and reflected such information in Keurig's stock price. Under these circumstances, all purchasers of Keurig's securities during the Class Period suffered similar injury through their purchase of Keurig's securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

50.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Keurig who knew that the statement was false when made.

## FIRST CLAIM
### Violation of Section 10(b) of
### The Exchange Act and Rule 10b-5
### Promulgated Thereunder Against All Defendants

51.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

52.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Keurig's securities at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

53.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Keurig's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.   All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

54.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Keurig's financial well-being and prospects, as specified herein.

55.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Keurig's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Keurig and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly

herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

56.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

57.     The defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Keurig's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain

such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

58.      As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Keurig's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Keurig's securities during the Class Period at artificially high prices and were damaged thereby.

59.      At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Keurig was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Keurig securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

60.      By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

61.      As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**
**Violation of Section 20(a) of**
**The Exchange Act Against the Individual Defendants**

62.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

63.     The Individual Defendants acted as controlling persons of Keurig within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

64.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

65.     As set forth above, Keurig and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct,

Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated:  August 14, 2015          **GLANCY PRONGAY & MURRAY LLP**

By:  *s/ Robert V. Prongay*
Lionel Z. Glancy
Robert V. Prongay
Casey E. Sadler
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  (310) 201-9150
Facsimile:   (310) 201-9160

*Attorneys for Plaintiff Kamlesh Patel*

CLASS ACTION COMPLAINT
23

## SWORN CERTIFICATION OF PLAINTIFF

## KEURIG GREEN MOUNTAIN, INC. SECURITIES LITIGATION

I, _Kamlesh Patel_____, certify that:

1.  I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2.  I did not purchase Keurig Green Mountain, Inc., the security that is the subject of this action, at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.  I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.  My transactions in Keurig Green Mountain, Inc. during the Class Period set forth in the Complaint are as follows:

    (See Attached Transactions)

5.  I have not served as a representative party on behalf of a class under this title during the last three years, except for the following:

6.  I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

Dated: _7/29/2015_____

DocuSigned by:

*Kamlesh Patel*

ABA227C01400426...   Kamlesh Patel

**Kamlesh Patel's Transactions in
Keurig Green Mountain, Inc (GMCR)**

| Date | Transaction Type | Shares | Unit Price |
|------|------------------|--------|------------|
| 3/25/2015 | Bought | 2,200 | $120.96 |
| 4/2/2015 | Sold | -300 | $113.65 |